## THE FIRST NATIONAL BANK OF MARSHALL v. ALVIN HOSMER, HARRIET HOSMER, MARY WESTBROOK ET AL.

*Creditor's bill—Variance in date of judgment—Remedy not cut off by ineffective levies.*

Relief on a judgment creditor's bill will not be denied on the ground that judgment was entered upon a later date than that stated in the bill, if it appears that the later judgment entry was merely to correct the one relied on, and does not appear that counsel did not have notice of the correction or were misled by the variance.

A variance between the actual date of judgment and that set forth in a creditor's bill based on it, may be corrected by amendment at any time during the proceedings; but if complainant is not confined to the exact date stated in the bill it may not be necessary.

A judgment creditor's remedy by bill in aid of execution is not cut off by the fact that he has filed the bill without awaiting the result of actions in replevin brought by third persons for personal property on which he had already levied, supposing it to belong to the debtor; nor is it cut off by the fact that he had levied on real estate of one of the defendants after it had been fraudulently conveyed; nor by his having levied upon an equity of redemption which had expired before sale could be made.

A judgment creditor is not obliged to follow all the fraudulent conveyances made by several execution defendants but may allow some to stand while he seeks to set aside others.

Appeal from Calhoun. Submitted October 14. Decided April 25.

CREDITOR'S BILL. Defendants Harriet and Mary appeal. Affirmed.

*James H. Campbell, Wm. D. Adams* and *G. V. N. Lothrop* for complainants.

*Miner & Stace* and *Wm. H. Porter* for defendants appellant. A judgment creditor must exhaust his remedy at law before filing a bill in aid of execution: *Trask v. Green* 7 Mich. 358; *Maynard v. Hoskins* id. 485; *Tyler v. Peatt* 30 Mich. 63; *Thayer v. Swift* Har. Ch. 430; *Williams v. Hubbard* Wal. Ch. 28; *Child v. Brace* 4 Paige 309; *Howard v. Sheldon* 11 Paige 558; a levy on personal property suspends other remedies while it holds: *People v. Hopson* 1 Den. 574; and a levy on sufficient property discharges the debt: *Farmers' Bank v. Kingsley* 2 Doug. (Mich.) 379; *Wood v. Torrey* 6 Wend 562; *Henry v. Gregory* 29 Mich. 68; *Jackson v. Bowen* 7 Cow. 13.

MARSTON, J. The complainant, as a judgment creditor of Alvin Hosmer and others, filed the bill of complaint in this case to reach two parcels of real estate alleged to have been fraudulently conveyed by said Alvin, one parcel to

defendant Harriet Hosmer and the other to defendant Mary Westbrook—or rather, in regard to Harriet Hosmer, to reach certain property purchased with the avails of the farm alleged to have been fraudulently conveyed to her.

It appears that on the 8th day of March, 1876, and for a long time prior thereto, Alvin Hosmer was the owner of what is called the "Home farm," which was unencumbered and of the value of eight thousand dollars and upwards, and also of a certain eighty-acre lot, held on a University Land certificate on which there was upwards of six hundred dollars unpaid. On March 8th, this certificate was assigned by him to his sister Mary Westbrook in consideration, it is claimed, of $1000, and on the same day the Home farm was conveyed to Harriet Hosmer, another sister, for a consideration as agreed upon, and as set forth in the deed, of $8000.

On the twenty-third of June, 1876, Harriet sold the Home farm to Joseph Bently for $9000, and on July 17th the city lot which is sought to be reached was purchased in the name of Harriet Hosmer, and improvements afterwards made thereon, amounting in all to over twenty-five hundred dollars.

In so far as these several transactions are in issue, we have no doubt whatever, from the testimony touching the facts relating thereto, but that complainant is entitled to the relief sought. When we consider all these matters, the pecuniary circumstances of all the parties, their relation to each other, that two important sales of all Alvin's property were made on the same day—one of them without any previous negotiations or even reference thereto having taken place, and the parties as to that parcel, the University lot, having met, as though by chance, on that day, at the house of a relative, and that but little had been said previous to that day about the sale of the Home farm,—and when we look at the way in which the respective considerations were paid, and trace a large part of the Bently consideration for the Home farm into Alvin's hands and the expenditure thereof upon the improvement of the city lot, we can have no doubt upon this branch of the case.

An extended discussion of all the facts we consider unnecessary in this class of cases.

Several legal objections are raised to the right of complainant to obtain relief, and these so far as deemed important will be considered:

*First.* It is claimed that the bill sets forth the recovery of judgments in the two suits referred to therein, while the proof shows that the judgments recovered on that day were afterwards vacated and judgments entered in the same cases on March 19th, which was beyond the power of the court, without a new inquest or trial. An examination of the record shows that the judgment of March 19th was for the purpose of correcting the judgment entry of March 7th so that it would conform to the judgment ordered by the court on that day. It does not appear that counsel had no notice of such correction or that it should not have been made, and the only question that can arise in relation thereto in the present controversy would be one of variance between the date of the judgment as set forth in the bill of complaint and proven on the trial. It is not claimed, and indeed could not very well be, that counsel were at all misled by this variance in dates, and were it material an amendment could have been made at any time during the proceedings in the present case. This, however, we do not deem necessary, as the complainant was not confined to the exact date alleged in the bill. In all other respects the judgment was correctly referred to and was sufficient to permit the introduction of the proofs upon that matter.

*Second.* It is next urged that complainant did not show proper diligence in the pursuit of his remedy at law upon the executions.

The fact that the sheriff may have levied upon personal property claimed by and afterwards replevied by third parties, could not bind the complainant to either await the result of such suit or to defend the same. If the complainant herein,—the plaintiff in the judgments and in whose favor the executions issued,—had directed the levy, or that the property levied upon belonged in whole or in part, at

the time of the levy, to the execution defendant, it might then become material to examine the effect of such a levy, but no such showing has been made. It is a levy upon the debtor's goods that operates *prima facie*. as a satisfaction, and the facts do not show such a levy to have been made in this case.

Neither would the fact that real estate of one of the defendants in the judgments was levied upon,—which it is alleged and admitted, by the answers in this case, had been fraudulently conveyed before such levy,—prevent complainant from proceeding in the present case. The complainant is under no obligation to follow all the fraudulent conveyances made by the several execution defendants, but may seek to have some of them set aside and permit the others to stand. The fraudulent grantees cannot insist upon any such equity in their behalf.

Neither would a levy upon the judgment debtor's equity of redemption in certain real estate about to be sold under a mortgage foreclosure, and which equity expired before a sale could be made under the execution, prevent the complainant from proceeding in this case. The mortgage was foreclosed in chancery, and the property sold and bid in by the complainant in that case, before a sale could be made by the sheriff under his levy. The execution creditor's right is not thus cut off from looking to other property of his debtor which had been fraudulently conveyed.

After a careful examination of the record, and consideration of the questions raised by counsel in behalf of the defendants, we are of opinion that the decree of the court below must be affirmed with costs.

COOLEY and GRAVES, JJ. concurred.

CAMPBELL, J. I do not think any fraud is made out against Harriet Hosmer or Mrs. Westbrook, who are the parties chiefly concerned on this hearing. Both of them paid a full price for the land they purchased, and there is nothing that has impressed me with the idea that any one whatever had then any wrong purpose. When the sales

were made Alvin Hosmer was out of debt, and did not contemplate incurring any on his own behalf.    If he then expected—and of this there is no satisfactory proof—to join the other parties as endorsers or sureties on the paper subsequently given, there is nothing to indicate that his grantees knew it, and nothing in my judgment to show that he designed or supposed that the sales could in any way jeopard the bank.    Nothing but actual fraud, in which the grantees shared, could avoid their grants, and I do not think it made out.